UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

National Railroad Passenger Corp., d/b/a Amtrak,

      Plaintiff,

v.                                  Case No. 06-10135

City of Bloomfield Hills School District,      Honorable Sean F. Cox

      Defendant.

_____/

## OPINION

    This action arises out of a written release negotiated by the parties following a collision involving a train operated by Plaintiff National Railroad Passenger Corp. d/b/a Amtrak ("Amtrak") and a bus operated by Defendant City of Bloomfield Hills School District ("the District"). After the parties filed cross-motions seeking summary judgment, this Court issued an Opinion & Order on February 12, 2007, denying Amtrak's Motion for Summary and granting the District's Motion for Summary Judgment to the extent that the Court ruled that the written release executed by the parties requires Amtrak to indemnify the District with respect to a personal injury lawsuit that followed the collision. The matter is currently before the Court on the parties' proposed final judgments in this matter, and the briefs filed in support of same. For the reasons that follow, the Court concludes that the written release executed by the parties does not require Amtrak to pay the District's attorney fees incurred in the underlying personal injury suit. The Court shall therefore issue a final judgment in this action consistent with that ruling.

1

## BACKGROUND[1]

Following the collision between Amtrak's train and the bus owned by the District, the parties

entered into a written release.  That written release provides as follows:

> The National Railroad Passenger Corporation (including its employees, agents, successors and assigns), in consideration of $74,000.00, the receipt and sufficiency of which is acknowledged, hereby **releases** the Bloomfield Hills School District and Gallagher Bassett Services, Inc**.** (including their employees, agents, successors and assigns) **of and from any and all claims, demands, damages, actions and causes of action whatsoever, whether known or unknown,** arising from or relating to a collision between Train #353 (more particularly Unit 90222) and a Bloomfield Hills School District bus on January 13, 2004.  The National Railroad Passenger Corporation also **agrees to indemnify the released parties, and hold them harmless, for the released claims**.
>
> IT IS UNDERSTOOD AND AGREED THAT THIS IS A FULL AND FINAL RELEASE FOR PROPERTY DAMAGE TO THE ABOVE EQUIPMENT AND THAT PAYMENT OF THE ABOVE STATED CONSIDERATION IS NOT AN ADMISSION OF LIABILITY.

(Ex. A to Compl.)(emphasis added).

After the release was executed, the Amtrak engineer who was operating the train at the

time of the collision sued the District in state court claiming that the District is liable for personal

injuries he sustained ("the Allen Suit").  Amtrak then filed this action, contending that the release

is limited to property damage suffered by Amtrak and does not require it to indemnify the

District with respect to the Allen Suit.  The District, on the other hand, contended that the release

executed by the parties covers the claims made against it in the Allen Suit and requires Amtrak to

indemnify it.

Following discovery, the parties filed cross-motions for summary judgment.  The

---

[1]The background of this action is fully set forth in this Court's 2/12/07 Opinion & Order. Only the facts relevant to the issues at hand are contained below.

District's Motion for Summary Judgment asked the Court to address 3 issues, as shown by the

District's "Concise Statement of Issues Presented:"

> 1.    Do the clear and unambiguous terms of the parties' Agreement **require Amtrak to indemnify the District**, and hold it harmless, for the claims brought by Amtrak employee Charles Allen against the District arising from the January 13, 2004 train/bus collision?
>
> 2.    Does Amtrak's failure to factually support its claim for reformation of the parties' Agreement on grounds of alleged fraud and mistake, as set forth in Count II of its Complaint, require dismissal of this claim?
>
> 3.    Does Amtrak's failure to tender back the $74,000.00 consideration paid by the District pursuant to the parties' Agreement prior to or simultaneously with the filing of its Complaint preclude Amtrak from pursuing the claims for rescission of the Agreement as set forth in Counts III through IX of its Complaint?

(Def.'s Summ. J. Br. at i)(emphasis added).  The District did include a conclusory request at the

end of its Motion for Summary Judgment that asked for attorney fees incurred in the Allen Suit

and in this action.  The District did not, however, analyze the attorney fee issue in its motion and

supporting briefs and it never submitted any documentation regarding the amount of attorney fees

incurred in the Allen action or in this action, nor did it ask the Court to rule that such attorney

fees were reasonable.

Following full briefing on the parties' cross-motions for summary judgment, and oral

argument, the Court issued an Opinion & Order on February 12, 2007 ("the Opinion & Order").

The Opinion & Order denied Plaintiff's Motion for Summary Judgment in its entirety.  It also

ruled as follows:

> IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Docket Entry No. 42] is GRANTED.  Plaintiff's Complaint is therefore DISMISSED WITH PREJUDICE and the Court DECLARES that the Release requires Amtrak to indemnify the District with respect to the Allen Suit.

3

The Court further directs counsel to confer in order to agree upon, and submit to the Court, a proposed final judgment in this matter, given the Court's above rulings. The status of such discussions shall be reported to the Court in writing on February 26, 2007. If the parties cannot agree upon the language of the final judgment, the Court will issue an order requiring the submission of proposed final judgments, and briefs in support of same.

IT IS SO ORDERED.

(2/12/07 Opinion & Order at 15).

The parties advised that they were unable to agree on a proposed final judgment in a February 26, 2007 letter to the Court. (Ex. 2 to Pl.'s Br.). That letter advised that the District claims that Amtrak is required to pay all costs and attorney fees incurred in the Allen Suit. Amtrak, on the other hand, claims that the language in the release does not require it to pay attorney fees in the Allen Suit, and even if it were so construed, only those costs and attorney fees that are deemed reasonable and necessary by the Court must be paid.

Pursuant to the Court's instruction, each party then submitted a proposed final judgment, and a brief in support of same, for the Court's consideration.

Amtrak' proposed final judgment would require Amtrak to indemnify the District with respect to the Allen Suit and provide that each party pays its own attorney fees in the Allen Suit and in this action. Amtrak asserts that, under Michigan law, indemnification agreements are strictly construed against the drafter and indemnitee, which in this case is the District. Amtrak asserts that the indemnification provision does not cover attorney fees because no express provision for such fees is contained in the language of the agreement. It relies primarily on *Beaudin v. Michigan Bell Telephone Co.*, 157 Mich.App. 185 (1987), but relies on other Michigan cases as well. Amtrak asserts that the District could have included language entitling it

4

to attorney fees, such as language obligating Amtrak to "defend" claims or language obligating Amtrak to indemnify the District for "attorney fees" or "any expenses," but did not do so here.

The District's proposed final judgment would require Amtrak to indemnify the District with respect to the Allen Suit and require Amtrak to pay the District attorney fees of $116,942.55 that have been incurred to date in the Allen Suit, along with any future attorney fees, costs or expenses in that action.

The District first asserts that the final judgment should require Amtrak to pay the District its actual attorney fees in the Allen Suit because this Court has already adjudicated the District's entitlement to such fees by granting summary judgment in favor of the District.

It's primary argument, however, is that the final judgment should require Amtrak to pay the District its actual attorney fees in the Allen Suit because Michigan law provides that the duty to indemnify and hold harmless for "any and all" claims includes the duty to pay the indemnitee's costs, expenses and attorney fees incurred in defense of the underlying action.   The District relies on the following cases: *Redfern v. R.E. Dailey & Co.*, 146 Mich.App. 8 (1985); *Hayes v. General Motors Corp.*, 106 Mich.App. 188 (1981); and the unpublished opinion of *Pengelly Trucking v. Great American Lines, Inc.*, 1996 Mich.App., LEXIS 1210 1996).  The District asserts that "the released claims" for which Plaintiff agreed to indemnify and hold the District harmless were broadly described as "any and all claims, demands, damages, actions and causes of action arising from or relating to" the underlying accident.  It further asserts that given the broad meaning of the terms "indemnify" and "hold harmless," that language is broad enough to entitle it to recover attorney fees.

5

<u>ANALYSIS</u>

A.    <u>This Court Has Not Previously Adjudicated The Attorney Fee Issue.</u>

As a preliminary matter, the Court rejects the District's argument that the attorney fee issue has already been adjudicated by this Court.  The District's Motion for Summary Judgment raised only three issues, and the attorney fee issue simply was not one of them.  In granting the District's motion, the Court declared that Amtrak had to indemnify the District with respect to the Allen Suit.  Because the attorney fee issue was not  presented to the Court, this Court did not analyze the attorney fee issue, nor did it declare that Amtrak has to reimburse the District for any attorney fees.

B.    <u>The Indemnification Provision Does Not Require Amtrak To Pay The District's Attorney Fees In The Allen Suit.</u>

The Court concludes that resolution of the attorney fee issue rests on the following cases: *Hayes v. General Motors Corporation*, 106 Mich.App. 188 (1981); *Redfern v. R.E. Dailey & Co.*, 146 Mich.App. 8 (1986); *Beaudin v. Michigan Bell Telephone Co.*, 157 Mich.App. 185 (1987); *Pengelly Trucking v. Great American Lines, Inc.*, 1996 Mich.App. LEXIS 1210 (1996); and *Hall v. W2 Construction Co.*, 2002 WL 1963744 (Mich.App. 2002).

*Hayes* involved a contract of indemnification between General Motors Corporation ("GM") and one of its contractors, Darin & Armstrong, Inc. ("the Contractor")  The indemnification provision stated, in pertinent part, that the "Contractor shall indemnify, hold harmless *and defend*" GM "from and against any and all claims and demands of whatever nature, regardless of the merit thereof." On appeal, one of the claims asserted by the Contractor was that the trial court erred in denying GM's request for attorney fees after GM's contractual indemnity

6

claim against the Contractor proved successful.

In considering the issue, the Michigan Court of Appeals noted that under general principles of common law indemnity, there is some authority for the proposition that attorney fees can be recovered as an expense incurred in the defense of the claim indemnified against, but not an expense incurred in establishing the right of indemnity. The court, noted, however that whether Michigan courts have accepted such a rule "is in some doubt." Moreover, the court noted that *because GM's "indemnity claim in the case at bar was contractual and not based upon the principles of common-law indemnity," GM's "right to recover attorney fees must be based upon the indemnity agreement in issue*." *Id*. at 201 (emphasis added). The court also noted that "[i]ndemnity contracts are construed most strictly against the party who drafts them, and against the party who is the indemnitee." *Id*. at 195. The court then stated that:

> The indemnity agreement in the case at bar provides that the 'Contractor shall indemnify, hold harmless and *defend the Owner*". (Emphasis added). One could possibly conclude that this language is not specific enough to enable General Motors to make a claim for attorney fees. It is a long-standing rule in the construction of indemnity contracts that, in order to be effective, the terms must be unequivocal. . . Although this conclusion would not be unreasonable, it is our belief that the better resolution is that the words 'hold harmless and defend the owner' strongly indicate that [the Contractor] had the contractual obligation to defend [GM]. . .
>
> Under these circumstances, this Court concludes that the trial court did err in not awarding [GM] attorney fees in connection with its successful indemnity claim.
>
> On the basis of the last issue, this case is remanded to the trial court so that an assessment of reasonable attorney fees can be made in favor of [GM].

*Id*. at 201-202.

*Redfern* also involved a contractual indemnity provision and the issue of whether or not the contract required payment of attorney fees. The provision in that case stated that Midwest would indemnify and save harmless Union Carbide "against all claims, liabilities, losses, damages *and expenses of every character whatsoever." Id*. at 19 (emphasis in appellate opinion). The *Redfern* court noted the general rule that a party entitled to common-law indemnification can recover attorney fees, and the *Hayes* court's reluctance to apply that rule to a case involving an express contract of indemnity. The *Redfern* court noted that, in its view, given the language at issue in the contract in *Hayes*, "[i]t is not at all clear whether [that] language applie[d] to costs incidental to defending a claim." The court concluded, however, that in contrast to the language in the *Hayes* contract, "the indemnity agreement in the instant case is much broader in scope and includes 'losses, damages and expenses.'" *Id*. at 19-20. The court therefore concluded that an award of attorney fees was appropriate. Because the trial court had not made a determination of the reasonableness of the claims fees, however, the appellate court remanded the matter to the trial court for such a determination. *Id.* at 20-22.

*Beaudin* also involved a contractual indemnity provision and the issue of whether or not that provision covered attorney fees. The provision in that case stated that:

> The customer indemnifies and saves the Company harmless against claims for libel, slander, or infringement of copyright . . . and against all other claims arising out of any act or omission of the customer in connection with facilities provided by the Company.

*Id.* at 186-87. The appellate court *rejected* the company's argument that it is entitled to indemnification for defense costs. It noted that while the indemnification provision stated that the customer indemnifies and saves the company harmless from "all other claims," the "language

8

does not expressly allow indemnification for attorney fees, costs or any other expense." *Id.* at 189.

The indemnification provision in *Pengelly* provided that the plaintiff agrees to indemnify "against any loss or claim resulting from injury or death of such driver(s)." The appellate court reversed the trial court's denial of attorney fees under that provision. In doing so, the court explained that notwithstanding the rule of strict construction applicable to indemnity agreements, the above language is "sufficiently broad to incorporate an obligation to make reimbursement for reasonable attorney fees expended in defense of a personal injury claim." *Id.* at *2. The court apparently reasoned that the word "any," as used in the indemnity provision ("any loss"), "means every" loss, which would include attorney fees expended. The court therefore remanded the matter to the trial court for a determination of the amount of attorney fees to which defendant is entitled.

In *Hall*, an unpublished case, the trial court concluded that W3 Construction ("W3") was entitled to attorney fees and costs under the language of the indemnity provision at issue there and awarded attorney fees of $27,520.90. The indemnity provision at issue there provided as follows:

> The Subcontractor shall indemnify and save harmless [W3] and its employees or agents from and against all losses and claims, demands, payments, suits, actions, recoveries and judgements [sic] of every nature and description brought or recovered against [W3] by reason of any act or omission of the said subcontractor, his agents or employees in the execution of the work or in the guarding of it.

*Id.* at *1. On appeal, the Michigan Court of Appeals concluded that the trial court erred in awarding attorney fees under that provision. The court explained its ruling as follows:

The parties rely on the terms of the indemnity provision.  In [*Redfern*], relied upon by the trial court for its award of attorney fees and costs, this Court held that attorney fees were recoverable under language stating 'expenses of every character whatsoever.'  Conversely, in [*Beaudin*], this Court held that the language in the indemnity provision did not expressly allow indemnification for attorney fees, costs, or any other expense.  In the present case, the indemnity provision applies to 'all losses and claims, demands, payments, suits, actions, recoveries and judgments of every nature and description,' but does not include any language including attorney fees, costs, or other expenses.  Therefore, we conclude that the trial court erred in awarding attorney fees and costs under the indemnity provision because the provision does not expressly provide for such a recovery.  The award of attorney fees and costs in favor of [W3] is accordingly reversed.

*Id*. at *2.

Here, the contractual indemnification language at issue states that "[Amtrak] hereby releases the [District] of and from any and all claims, demands, damages, actions and causes of action whatsoever, whether known or unknown, arising from or relating to [the January 13, 2004 accident]" and that Amtrak "also agrees to indemnify the released parties, and hold them harmless, for the released claims."

Unlike the provision at issue in *Hayes*, the above provision contains no language referencing any duty to "defend" the District.  There is also no language requiring Amtrak to indemnify the District as to any "expenses" incurred by the District as was seen in *Redfern*.  To the contrary, the language at issue here is more like the language in *Beaudin* than the language in *Redfern*.  The language here only requires Amtrak to indemnify the District from all "claims, demands, damages, actions and causes of action."  Like the provision in *Beaudin*, the indemnification provision here does not expressly allow indemnification for attorney fees, costs, or other expenses.  Accordingly, the Court concludes that the indemnification provision does not

10

require Amtrak to pay the District's attorney fees in the Allen Suit.[2]

CONCLUSION

For the reasons set forth above, the Court concludes that this Court has not previously adjudicated the attorney fee issue.  The Court further concludes that the indemnification provision does not require Amtrak to pay the District's attorney fees in the Allen Suit.  The Court shall therefore issue a final judgment in this matter consistent with these rulings.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 1, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 1, 2007, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

---

[2]The Court further concludes that the District has waived the attorney fee issue by not presenting the Court with any basis to examine the attorney fees requested or make any determination as to whether such fees are reasonable.  The District did not file a motion seeking an attorney fee award.  In addition, the District acknowledges that Amtrak has challenged the reasonableness of the attorney fees it has requested in connection with its proposed final judgment.  The District has never, however, either in the parties' cross-motions for summary judgment or in this second round of briefing by the parties, provided the Court with any documentation whatsoever as to the attorney fees actually incurred in the Allen Suit.  Thus, even if the indemnification provision covered attorney fees, this Court could not make a reasonableness determination in any event.

11